# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO MARTINEZ, | 1:10-cv-01192-LJO-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J.F. SALAZAR, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction of kidnapping during the commission of a car-jacking and robbery. Petitioner was sentenced to life with the possibility of parole plus four years.

In the instant petition, Petitioner does not challenge the validity of his conviction; rather, he challenges of the Board of Parole Hearings (Board) September 30, 2008 decision finding him unsuitable for parole.

Petitioner filed a petition for writ of habeas corpus in the San Diego County Superior Court, challenging the Board's 2008 decision finding him unsuitable for parole. The superior court denied the petition finding that the "Board has a reasonable concern about Petitioner's present dangerousness due to the facts of the commitment offense and based on the fact that

1

Petitioner's offense was part of [a] crime spree that was relatively recent in relation to his initial parole eligibility hearing."

Petitioner then filed a petition in the California Court of Appeal. The appellate court also denied the petition in a reasoned decision finding some evidence to support the Board's decision.

Petitioner filed a petition for review in the California Supreme Court, which was summarily denied.

Petitioner filed the instant petition for writ of habeas corpus on November 8, 2010, and Petitioner filed a traverse on November 29, 2010.

STATEMENT OF FACTS

On April 14, 1999, victim, Johnny Tolbert, walked out to his vehicle to retrieve his sunglass case. As he turned back to return to his apartment, he was approached by Petitioner who was carrying a knife. Petitioner instructed the victim to get back into his vehicle. One of Petitioner's crime partner was armed with a sawed-off shotgun and the other was armed with a baseball bat, and both entered the vehicle. The victim was instructed to drive to the Cresthaven area. Jiminez-one of crime partners, told the victim that he and the others were part of the Warlock gang and that they would kill him and his family if he reported the incident to the police.

They ordered the victim out of the car and told him that they had no intent of keeping the vehicle. They demanded the victim give them his driver's license so they would know where he lived. The victim complied and was allowed to exit the vehicle. He walked to the San Marcos Fire Station and called the Sheriff's Department. While the police were taking Petitioner's report, they received a call of a robbery with the description of the vehicle matching the victim's stolen vehicle. The police located the vehicle and initiated a traffic stop. Police found numerous stolen items in the vehicle as well as a knife with an approximately ten inch long blade and an unloaded 12 gauge shotgun, as well as a baseball bat. Petitioner and his crime partners were taken into custody. Petitioner and his partners admitted the carjacking and robbery, and also confessed to a total of seventeen robberies that had been committed in the San Marcos, Vista, Oceanside, and Escondido area.

DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

1  "[A] federal court may not issue the writ simply because the court concludes in its
2  independent judgment that the relevant state court decision applied clearly established federal
3  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.
4  A federal habeas court making the "unreasonable application" inquiry should ask whether the
5  state court's application of clearly established federal law was "objectively unreasonable."  Id. at
6  409.

7  Petitioner has the burden of establishing that the decision of the state court is contrary to
8  or involved an unreasonable application of United States Supreme Court precedent.  Baylor v.
9  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
10 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
11 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
12 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

13 II.    Review of Petition

14 There is no independent right to parole under the United States Constitution; rather, the
15 right exists and is created by the substantive state law which defines the parole scheme.  Hayward
16 v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,
17 482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing
18 Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.
19 Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive
20 nature of the parole-release decision, state statutes may create liberty interests in parole release
21 that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S.
22 at 371.

23 In California, the Board of Parole Hearings' determination of whether an inmate is
24 suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the

4

>panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to
>
>the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

>(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
>
>>(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>(C) The victim was abused, defiled or mutilated during or after the offense.
>>(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>(E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
>(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'
>
>(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.
>
>(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at

609. Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. <u>Last Reasoned Decision</u>

The California Court of Appeal issued the last reasoned decision denying the petition stating:

> In 2000 [Petitioner] pleaded guilty to one count of kidnapping during a carjacking and 16 counts of robbery. [Petitioner] admitted he personally used a knife, a firearm and other deadly weapons during the crimes. The court sentenced him to a term of life plus four years in prison. [Petitioner's] minimum eligible parole date was September 15, 2009.
>
> On September 30, 2008, the Board of Parole Hearings (Board) conducted [Petitioner's] initial parole consideration hearing and declined to set a parole date, finding [Petitioner] would pose an unreasonable risk of danger to society if he were released based on the calculated and violent nature of the two-month crime spree in 1999. The Board also characterized [Petitioner's] programming gains as "recent" and indicated he "must demonstrate the ability to maintain those gains over an extended period of time." The Board set his next hearing in one year.
>
> [Petitioner] contends the Board denied him due process because its decision is not supported by some evidence that he is currently dangerous.
>
> In reviewing the decision of the Board to deny parole, "the standard of review is whether there exists 'some evidence' that an inmate poses a current threat to public safety, rather than merely some evidence of the existence of a statutory unsuitability factor." (*In re Shaputis* (2008) 44 Cal.4th 1241, 1254; *In re Lawrence* (2008) 44 Cal.4th 1181, 1191.) "[T]he relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." (*Lawrence*, at p. 1221.)
>
> The record shows [Petitioner] and his codefendants armed themselves with weapons including a knife, guns and a baseball bat to rob random, vulnerable individuals in North County over a period of several months. [Petitioner] was ultimately arrested after carjacking and kidnapping a man at knifepoint. [Petitioner] and the codefendants threatened to kill the victim if he reported the criminal activity to police.
>
> The Board commended [Petitioner] for obtaining vocations in cable network installation and garment making. The Board noted [Petitioner] obtained his GED in 2001 and participated in Alcoholics Anonymous and Narcotics Anonymous for three years. He has also participated in Bible studies, a victim awareness program and an alternatives to violence program. [Petitioner] was disciplined in 2001 for a nonviolent rules violation. An evaluating psychologist found [Petitioner] to be in the low range for violent recidivism. The Board found [Petitioner] has realistic parole plans in Mexico where he will be deported.
>
> The Board made an individualized inquiry into suitability for parole and its 2008 decision is supported by some evidence, given the numerous violent crimes [Petitioner] committed over a period of months and his relatively recent

programming accomplishments. We do not address [Petitioner's] argument as to the superior court order denying his petition in that court. (*In re Clark* (1993) 5 Cal.4th 750, 767, fn.7.)

The petition is denied.

(Ex, 2, to Answer.)

B.   2008 Board Hearing

At Petitioner's *initial* parole suitability hearing in 2008, the Board found him unsuitable for release based on the circumstances of the commitment offense which included a crime spree spanning over a period of two months.

Over a period of two months, Petitioner and his crime partners approached vulnerable victims with weapons and robbed them. Petitioner was ultimately arrested on the same day that he approached victim, Johnny Tolbert, with a knife and ordered him to drive to a certain neighborhood. The men threatened to kill the victim and his family if he reported the incident to police. The victim was ordered to turn over his Driver's License so they would know where he lived. Petitioner had the opportunity to retreat yet he failed to do so. Petitioner admitted to kidnapping the victim and committing numerous other armed-robberies all for his own monetary gain. There is no doubt the robberies were planned and showed a degree of sophistication by approaching innocent and vulnerable victims while armed with a weapon and demanding money. The offenses were committed in a dispassionate and calculated manner.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, at the time of Petitioner's *initial* parole hearing in 2008, he had only served six years on his life term. The Board commended Petitioner for his positive programming; however, given Petitioner's minimal period of incarceration, it was certainly reasonable for the Board and appellate court to find that

he must continue his gains over an extended period of time before it can be said that he no longer remains an unreasonable risk to public safety if released.

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  The instant petition for writ of habeas corpus be DENIED; and

2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   **December 8, 2010**          /s/ **Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE